Calvin Joseph WILLIAMS,
Petitioner-Appellant,

v.

James A. LYNAUGH, Director, Texas Department of Corrections, and The Honorable Jim Mattox, Attorney General of Texas, Respondents-Appellees.

No. 88–2131.

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1988.

Washington, Lampley, Evans & Braquet, Craig A. Washington, Houston, Tex., Richard H. Burr, III, New York City, for petitioner-appellant.

Jim Mattox, Atty. Gen., Bob Walt, Asst. Atty. Gen., Austin, Tex., for respondents-appellees.

Before CLARK, Chief Judge,
WILLIAMS and HIGGINBOTHAM,
Circuit Judges.

PER CURIAM:

Calvin Joseph Williams was convicted in state district court on August 26, 1980, of capital murder during the course of committing burglary of a habitation. In a separate sentencing hearing on the next day, he was sentenced to death. His conviction was affirmed on appeal.

Since that time, three execution dates have been set aside, four petitions for habeas corpus have been heard and denied in state courts and one in federal court, the denial affirmed by this Court. He has also just filed a fifth habeas corpus petition in state court which makes the claims numbered 8 and 9 below. These two claims also were added by amendment to his current petition while it was in the district court. Appellant is now before this Court on denial of his second federal habeas corpus petition by federal district court. He asks for a certificate of probable cause to appeal, and a stay of the execution date now set for early in the morning of February 11, 1988.

Although we did not receive this appeal until 7:30 p.m., February 10, 1988, we have given full review to the record. We had carefully considered appellant's claims and the record prior to the filing of the petition in this Court. This is our established procedure under Local Rule 8 and Fifth Circuit Internal Operating Procedures following that rule.

Petitioner makes nine claims which can be briefly paraphrased as follows:

1. A confession was unlawfully obtained.

2. Prospective jurors who were disqualified because of conscientious opposition to the death penalty were improperly excluded from the jury.

3. The basic Texas statute providing for capital punishment is unconstitutional.

4. The prosecution systematically excluded blacks from the jury by the use of peremptory challenges.

5. Because of the misuse of peremptory challenges by the prosecutor, the conviction and sentence was unconstitutional.

6. Black defendants who murder white victims are the object of discrimination under the Texas law as it is applied and administered.

7. The Texas law does not allow for charging the jury to consider mitigating evidence nor does it provide a procedure under which the jury may apply mitigating factors in answering special issues directed toward capital punishment.

8. Appellant was denied the opportunity to introduce evidence of his mental condition in mitigation because the same evidence could have been taken by the jury without proper instruction as aggravating.

9. In closing argument the prosecutor improperly elicited sympathy for the deceased victim of appellant's crime.

The first six of these nine claims are totally repetitive with claims made in prior habeas corpus proceedings in the state and federal courts. They have all been denied in the prior federal habeas corpus proceeding, and that denial was affirmed by this Court on July 29, 1987, *Williams v. Ly-*

*naugh*, 826 F.2d 11 (1987) (unpublished). These issues constituted successive writs. They have already been decided on the merits, "and the ends of justice would not be served by reaching the merits again." (*Moore v. Blackburn*, 806 F.2d 560 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1988, 95 L.Ed.2d 827 (1987). There is no "colorable claim of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986).

■ Issue number nine can be disposed of briefly. No objection was made to the prosecutor's argument at the trial. Appellant had the opportunity to raise this issue in his original appeal, in any one of the first four state habeas petitions and in his earlier federal habeas petition. The claim at this time clearly constitutes abuse of the writ under Rule 9(b) Rules Governing Section 2254 cases. The Supreme Court has made an apt description of claims such as this and has indicated specifically that they should be treated as an abuse of the writ. In *Woodard v. Hutchins*, 464 U.S. 377, 380, 104 S.Ct. 752, 753, 78 L.Ed.2d 541 (1984) a majority of the Court said:

A pattern seems to be developing in capital cases of multiple review in which claims that could have been brought years ago are brought forward in a piecemeal fashion only after the execution date is set or becomes eminent. Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus.

This statement is in a concurring opinion by Justice Powell to a brief per curiam decision of the Court, but the concurrence garnered the votes of a majority of the Court. This Court on a number of occasions has upheld the refusal to consider habeas corpus claims because of abuse of the writ even in capital cases. *E.g. Johnson v. Lynaugh*, 821 F.2d 224 (5th Cir.), stay denied, —— U.S. ——, 107 S.Ct. 3248, 97 L.Ed.2d 752 (1987).

Finally, we come to issues number seven and eight which are the only issues that have not been passed upon in the prior state and federal habeas corpus proceedings. Both the Texas Court of Criminal

Appeals, *Quinones v. State*, 592 S.W.2d 933 (Tex.Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980), and this Court, *Granviel v. Estelle*, 655 F.2d 673, 675 (5th Cir.1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982), have held the Texas capital punishment statute constitutional as against the claim that it lacks specific provision for charge to the jury and consideration by the jury of mitigating circumstances. Petitioner asserts, however, that since the Supreme Court granted certiorari in the case of *Franklin v. Lynaugh*, 823 F.2d 98 (5th Cir.), *cert. granted*, —— U.S. ——, 108 S.Ct. 221, 98 L.Ed.2d 180 (1987), doubt has been cast upon these holdings. It is urged that petitioner's execution be stayed until the Supreme Court renders an authoritative decision in *Franklin v. Lynaugh*.

At petitioner's punishment hearing, mitigating evidence on his behalf from his mother was allowed to go before the jury. Further, petitioner himself testified to the jury in mitigation. No objection to the instruction to the jury was raised although it did not specifically refer to the mitigating testimony.

The State argues that failure to raise at the trial the issue now presented constituted a waiver under Texas law. This is so only if it would be expected that petitioner would see the importance of the issue and raise it at that time. It is urged by the State that under its contemporaneous objection rule, the issue had already been raised and rejected by the Texas Court of Criminal Appeals six months before the *Williams* trial. *Quinones v. State*, 592 S.W.2d at 947.

We do not rest our analysis upon the claim that counsel should have been aware of the issue sufficiently to have raised it at the trial, even though the Supreme Court has held, in some circumstances at least, that failure to raise an issue in the face of well established legal authority can constitute a waiver of the claim. *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982). We cannot close our eyes to the fact that the granting of certiorari by the Supreme Court in *Franklin* has at least raised the possibility that what had become accepted as established legal authority may be modified, at least to some extent.

■ The starting point of our analysis must be in the fact that the law concerning the validity of the Texas statute as it relates to factors in mitigation is at this time clear and established. The statute is constitutional. The statute was upheld in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Further, in *Lockett v. Ohio*, 438 U.S. 586, 607, 98 S.Ct. 2954, 2966, 57 L.Ed.2d 973 (1978), the Supreme Court specifically stated that the Texas statute "survived the petitioner's Eighth and Fourteenth Amendment attack because three Justices concluded that the Texas Court of Criminal Appeals had broadly interpreted the second question—despite its facial narrowness—so as to permit the sentencer to consider 'whatever mitigating circumstances' the defendant might be able to show."

In a number of later cases, we have followed the principle that mitigating evidence can be introduced and that it obviously is before the jury to be considered as part of the jury's decision as a balance to the aggravating circumstances which the jury must find to justify capital punishment. As we said in *Penry v. Lynaugh*, 832 F.2d 915, 926 (5th Cir.1987): "These prior panel holdings bar a different holding by us."

Petitioner's mitigating evidence consisted almost entirely of the fact that he was one of a number of children, and that after his father had died when he was 10 years old, his mother had to work to support the family so that he had been left without adult supervision. The evidence also showed that his mother had had a nervous breakdown when he was 9 years old.

This mitigating evidence was countered by evidence that he had already served one 5 year sentence for aggravated robbery and while still a juvenile had engaged in some purse snatching and had been placed in the custody of juvenile authorities. In addition, six prison employees testified that Williams had struck or fought with other

inmates on six occasions while incarcerated.

In *Penry v. Lynaugh, supra,* the panel opinion considered carefully the implications under the Texas Capital Punishment Statute of evidence of mental retardation whether caused by birth trauma or by childhood environmental factors such as beatings and being locked in a room for extended periods of time. At the penalty phase of the trial the jury was instructed to consider all the evidence it had heard at the guilt phase of the trial and also all of the evidence introduced at the penalty phase of the trial. Penry objected that the court failed to instruct the jury to weigh aggravating and mitigating circumstances and failed to authorize a discretionary grant of mercy based upon the existence of mitigating circumstances.

The panel opinion recognized that the evidence of Penry's mental condition could serve as an aggravating as well as a mitigating circumstance, and it cast some doubt upon the constitutional application of the Texas statute under such circumstances without such instructions.

Issue eight obviously takes its cue from this opinion in the *Penry* case. The record shows that a court appointed psychiatrist examined appellant Williams at the time of his prosecution and found him to be mentally responsible and without serious mental problems which might serve in mitigation or aggravation. Hence, no such testimony was introduced, no objection was made, and there was no request for instructions on the evidence in mitigation.

On February 7, 1988, counsel for appellant had appellant examined by a consulting psychologist who concluded that because of a background of physical abuse when he was a child, the use of drugs starting at age ten, and a possible early blow on the head, there was a likelihood that the appellant had temporal lobe epilepsy manifested in olfactory aura, hallucinations, violent behavior, and schizophrenia. The conclusion also was stated that he undoubtedly "suffered some diminished capacity at the time of the alleged offense" and that the then existing stage of his mental difficulties "most probably affected his ability to conform his conduct to the requirements of law."

But this affidavit of the consulting psychologist as to his examination made eight years after the trial also recognizes the progressive nature of appellant's mental condition under this diagnosis. In addition he cautions that predictions of violent behavior by consulting psychologists are proved wrong two out of three times and indicates that his own predictions fall in that category.

To counter this report by the consulting psychologist, the state has gone back to the psychiatrist who originally examined appellant in 1980 pursuant to court order. In an affidavit dated February 9, 1988 the psychiatrist states that he stands by the evaluations of appellant made in 1980 that appellant was "not organic, i.e. he was not suffering from organic brain syndrome," and "additionally there was no evidence of any disease of mind or mental defect which would have interferred with his ability to appreciate the wrongfulness of his conduct or prevented or interferred with his ability to conform his conduct to the requirements of the law at the time of the alleged offense."

Thus, the careful evaluation by the psychiatrist at the time of the trial found no significant mental incapacity. Further, no objection was made at the time of the sentencing hearing as to the handling of the evidence in mitigation. The procedures at that hearing strictly followed the law as it had been established in upholding the Texas statute in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) and the specific related comment on the Texas law in the opinion of the Court in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed. 2d 973, (1978). No claim of inadequacy of counsel can be made. There had been careful psychiatric examination. Even now in the 1988 examination, there is considerable doubt raised that mental illness was present in any observable amount at the time of appellants trial.

We must conclude, therefore, that the doubts raised by the Court's opinion in the

*Penry* case are not relevant in this case. There the evidence of mental disability was available, and objection was made to the handling of the evidence in mitigation under the established Texas procedure. Thus, we are bound by the established law that Texas Capital Punishment Statute is constitutional as it was applied to Williams with respect to mitigating evidence, and this case does not raise even in slight measure the doubt which was expressed by this Court's opinion in *Penry*.

On the basis of our analysis, we must conclude that there is no probable cause to issue a certificate to appeal or a stay of execution in this case. We recognized in *Brogdon v. Butler*, 824 F.2d 338, 340 (5th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 13, 97 L.Ed.2d 802 (1987), that in a capital case "while the movant need not always show the probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs in favor of granting the stay," *quoting O'Bryan v. McKaskle,* 729 F.2d 991, 933 (5th Cir.1984). In an earlier federal habeas corpus proceeding the first six grounds claimed have already been decided against the petitioner. The ninth claim constitutes a clear abuse of the writ. The law of the seventh and eighth claims has been established by decisions of the Supreme Court and this Circuit. There is no substantial case on the merits involving a serious legal question. The stay of execution and a certificate of probable cause to appeal must be denied.

STAY OF EXECUTION DENIED.

CERTIFICATE OF PROBABLE CAUSE TO APPEAL DENIED.