IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 88-2278

---

JOHN HENRY SELVAGE,

Petitioner-Appellee-
Appellant,

versus

JAMES A. COLLINS, Director,
Texas Department of Criminal
Justice, Institutional Division,

Respondent-Appellant-
Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

(August 27, 1992)

Before POLITZ, Chief Judge, HIGGINBOTHAM, and WIENER, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

I.

We return to the claims of John Henry Selvage including his claim that the jury could not give due expression to his mitigating evidence under the three question submission required at the time of his trial in Texas.[1]  We rejected Selvage's claims in his second

---

[1]See Penry v. Lynaugh, 106 L.Ed.2d 256 (1989).  Selvage raises three interrelated "Penry" claims, including a claim that the sentencing statute prevented the presentation of additional mitigating evidence and also prevented trial counsel's investigation of available mitigating evidence.  None of these claims was made in Selvage's first federal habeas.

federal habeas petition, because we found that his _Penry_ claims were barred by the absence of a contemporaneous objection.[2] Ultimately, on a remand from the Supreme Court with instructions to determine if Texas would persist in asserting the procedural bar, we certified the question to the Texas Court of Criminal Appeals.[3]

The Texas Court of Criminal Appeals found no procedural bar.[4] In the meantime the Supreme Court limited the scope of a successive federal habeas claim.[5] Absent legal cause and prejudice, a federal court may not reach the merits of (a) claims made in a successive federal habeas petition which raise grounds identical to grounds of an earlier claim decided on the merits, (b) new claims, not previously raised which abuse the writ, and (c) procedurally defaulted claims, unless the claim implicates legal innocence. As we will explain, Selvage cannot meet the cause and prejudice requirement and must demonstrate that his new claims in this his second federal habeas petition implicate legal innocence.[6]

## II.

In _Cuevas v. Collins_, ___ F.2d ___ (1991), we found that the legal basis for a _Penry_ claim was available at least as early as 1980, some five years before Cuevas filed his second federal habeas

---

[2]_Selvage v. Lynaugh_, 842 F.2d 89 (5th Cir. 1988).

[3]_Selvage v. Collins_, ___ U.S.___, 110 S.Ct. 974 (1990); 897 F.2d 745 (5th Cir. 1990).

[4]_Selvage v. Black_, ___ S.W.2d ___, No. 71,024 (Tex. Crim. App. May 29, 1991).

[5]_McClesky v. Zant_, ___ U.S. ___, 111 S.Ct. 1454 (1991).

[6]_Sawyer v. Whitley_, 112 S.Ct. 2514, 2519 (1992).

2

petition.  Selvage's first petition for habeas relief was filed in 1985.  Applying Engle v. Isaac, 456 U.S. 107 (1982), we also rejected as legal cause any perceived futility in pursuing a Penry claim.  Selvage can proceed then only if his claims implicate legal innocence of the death sentence.

III.

Our task is to apply to the quite different Texas capital sentencing scheme the Supreme Court's treatment of the Louisiana sentencing scheme in Sawyer v. Whitley, 112 S.Ct. 2514 (1992). Sawyer is part of the Court's continuing effort to define the concept of legal innocence of a sentence.  Chief Justice Rehnquist explained for the majority:

> [T]he actual innocence requirement must focus on those elements which render a defendant eligible for the death penalty, and not on additional mitigating evidence which was prevented from being introduced as a result of a claimed constitutional error.

Id. at 4659.

Chief Justice Rehnquist saw three possible ways to define actual innocence.  First, and the most stringent would be to "limit the showing to the elements of the crime which the state has made a capital offense."  Id. at 2521.  A second possible definition and the most lenient would be to extend the definition to consideration of mitigating evidence which bore on the discretionary decision to impose the penalty.  In the Court's view, the second definition would be quite close to the definition of prejudice for many constitutional errors and by requiring a petitioner to show little

3

more than an adverse effect on discretionary decisions would work a practical evasion of the cause and prejudice limit.

The court took a third and middle course. The Chief Justice observed that Louisiana uses both the elements of the crime and aggravating factors to narrow the class of defendants eligible for the death penalty. The court held that a petitioner must "show by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty." Id. at 2523. Actual innocence means that a jury could not have found one or more essential narrowing factors--that is, "elements which render a defendant eligible to have the death penalty imposed." Id. at 4659.

## IV.

Texas argues that Penry error cannot implicate actual innocence of a capital sentence in Texas because any person convicted of capital murder in Texas is "eligible" for the death penalty. This is because, the argument continues, the two statutory questions inform the jury's discretion and do not narrow in a relevant way the class of defendants eligible for the death penalty.

Selvage argues that "a capital jury in Texas is not authorized to impose death unless and until it considers mitigating circumstances." This is so Selvage argues, both as a matter of state law and under Furman's required narrowing of the class of death-eligible defendants.

4

Texas and Louisiana differ in their narrowing of the class of persons eligible for a death sentence. In Louisiana the jury must find an aggravating circumstance before it can exercise its discretion. Texas narrows the offense. The difficulty is that Texas continues its narrowing in the sentencing phase by requiring affirmative answers to questions of deliberateness and future dangerousness. Under state law if the jury gives an affirmative answer to both questions, the trial court must impose the death sentence. At the same time, the questions do not "hone in on the objective factors or conditions that must be shown to exist before a defendant is eligible to have the death penalty imposed." Id. at 2523. To the contrary, as Selvage's claims illustrate, it is a "difficult task to assess how jurors would have reacted to additional showings of mitigating factors." Id. at 2522.

Selvage's argument reduces to the contention that there was "additional mitigating evidence which was prevented from being introduced as a result of a claimed constitutional error." 112 S.Ct. at 2523. His argument is that evidence he did offer and evidence he would have offered but for constitutional error would have mattered--that it was prejudicial. Sawyer explicitly held that such a claim did not focus on "actual innocence." 112 S.Ct. at 2524. Selvage was "eligible" for the death penalty with or without the evidence.

We recognize that in practical terms this means that federal courts will not entertain "Penry" error in a successive federal writ. This is the direct sum of McClesky and Sawyer. Justice

5

Stevens urged the court to adopt a "clearly erroneous" test to escape this result, but he did so in a dissenting opinion joined only by Justices Blackmun and O'Connor.[7]

We are persuaded that Selvage's claims failed to implicate innocence of the death sentence and are foreclosed by McClesky and Sawyer.  We must affirm the district court's dismissal of the petition and vacate the stay of execution.

---

[7]Sawyer v. Whitley, ___ U.S. ___, 112 S.Ct. 2514, 2530 (1992) (J. Stevens, dissenting).